UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MARY KATE SQUICCIARINI,

                      Plaintiff,

- against -

THE UNITED STATES OF AMERICA,
HUDSON RIVER PARTNERS I L.P., and
THE BRICKMAN GROUP LTD. LLC,

                      Defendants.

**OPINION AND ORDER**

12 Civ. 2386 (ER)

Appearances:

Eleanor Louise Polimeni
Finkelstein & Partners, LLP
Newburgh, NY
*Attorney for Plaintiff*

Preet Bharara
Rebecca Sol Tinio
United States Attorney's Office for
the Southern District of New York
New York, NY
*Attorneys for Defendant The United States of America*

Bradley J. Levien
Malvina Levin Herschkowitz, *on the brief*
Mintzer, Sarowitz, Zeris, Ladva & Meyers LLP
New York, NY
*Attorneys for Defendant The Brickman Group Ltd. LLC*

Ramos, D.J.:

        Plaintiff, Mary Kate Squicciarini, brought suit against the United States of America (the "United States" or the "Government"), Hudson River Partners I L.P. ("Hudson River") and the Brickman Group Ltd. LLC ("Brickman") (collectively, "Defendants") pursuant to the Federal Tort Claims Act ("FTCA") seeking $5 million in compensatory damages for personal injuries

she suffered as the result of an accident allegedly caused by Defendants' negligence.  Doc. 1 ("Compl.") ¶¶ 2-3, 37-44.  Brickman has asserted cross-claims for contribution against the United States and Hudson River.[1]  Brickman Ans., Doc. 7.

Before the Court is the Government's Motion to Dismiss Plaintiff's Complaint and Brickman's cross-claim for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).  Doc. 11.  For the reasons set forth below, the Government's Motion to Dismiss is GRANTED in full.

I. Background

The following facts have been taken from the Complaint and are accepted as true for purposes of this motion.  *Famous Horse Inc. v. 5th Ave. Photo Inc.*, 624 F.3d 106, 108 (2d Cir. 2010).

Plaintiff alleges that, on September 25, 2009, while walking to the parking lot on the premises of the Thayer Hotel in West Point, New York, she slipped on a dangerous accumulation of acorns as she attempted to step onto the curb of a sidewalk and was seriously injured as a result of the fall.  Compl. ¶¶ 37-38.  It is important to describe at the outset where the accident took place and the relationship between Defendants in order to understand the context in which Plaintiff's purported federal cause of action arose.  The Thayer Hotel (the "Hotel") is located on the grounds of the United States Military Academy ("USMA") in West Point, New York.  Declaration of Stacy S. Fagan ("Fagan Decl.") ¶ 3, Ex. A (the "Contract"), at 3, Doc. 14.[2]  The

---

[1] Subsequent to the filing of the Government's motion to dismiss, but prior to the completion of briefing, Hudson River filed its Answer to Plaintiff's Complaint and asserted a number of cross-claims against Brickman.  Doc. 17 ("Hudson Ans.").  Hudson River did not file or seek leave to file any papers in connection with the instant motion, and the parties have not asked the Court to address the cross-claims asserted by Brickman and Hudson River against each other.

[2] Additional facts relating to the relationship between the Government and Hudson River, which are relevant to the Court's analysis of subject matter jurisdiction over the United States, can be properly considered in deciding a

2

Hotel and the surrounding real property are owned by the United States. *Id.*; Fagan Decl. ¶ 5, Ex. D (the "Lease"), at 1.  In March 1998, Hudson River assumed responsibility for the day-to-day operation and maintenance of the Hotel and surrounding land pursuant to three legal agreements that are described in further detail below.  Plaintiff asserts that at some point prior to her accident both the United States and Hudson River entered into an agreement with Brickman to perform landscaping work on the premises of the Hotel, including the removal of acorns.[3]  Compl. ¶¶ 33-36.

Plaintiff claims that Defendants were collectively negligent in failing to adequately remove or provide for the removal of the acorns, despite knowing that the presence of acorns on the property was a regularly recurring condition. *Id.* ¶¶ 39-40.  Plaintiff further alleges that Defendants had actual or constructive notice of the dangerous condition created by the accumulation of acorns because the condition existed for a sufficient period of time prior to her accident such that, in the exercise of reasonable care, Defendants could have and should have known of the condition. *Id.* ¶ 42.

On June 17, 2011, Plaintiff filed an administrative claim with the Staff Judge Advocate General, USMA seeking $5 million in damages for the injuries she sustained as a result of the accident described above.  Decl. of Katherine Denehy ¶ 3, Ex. A (the "Administrative Claim"),

---

motion to dismiss under Rule 12(b)(1) without the necessity of converting the Government's motion into one under Rule 56.  *Fisko v. U.S. Gen. Servs. Admin.*, 395 F. Supp. 2d 57, 60 (S.D.N.Y. 2005) (citation omitted)

[3] Brickman denied these allegations in its Answer to Plaintiff's Complaint.  Brickman Ans. ¶ 6.  Hudson River denied any knowledge or information sufficient to form a belief as to the allegations.  Hudson Ans. ¶¶ 4-5. While the exact contours and nature of the relationships between Brickman, Hudson River and the Government are unclear, it appears, based on the record as a whole, that Hudson River hired Brickman as a subcontractor to perform landscaping work on the Hotel and Lease Site.  For purposes of this motion, the Court has accepted as true the allegations in the Complaint to this effect.  Compl. ¶¶ 35-36; *Famous Horse Inc.*, 624 F.3d at 108.

3

Doc. 15.  The USMA Claims Office did not issue a final disposition of Plaintiff's Administrative Claim prior to the commencement of this lawsuit.[4]

### The Agreements Between the Government and Hudson River

In March 1998, Hudson River entered into a contract with the United States Army Morale, Welfare and Recreation Fund, the former operator of the Hotel, to design, construct, operate and maintain the Hotel and several acres of surrounding land for a fifty-year term.  Fagan Decl. ¶ 3; Contract at 1-4; *id.* at 11, §§ 1.7(ap), 1.7(aw).  Simultaneously, Hudson River entered into a privatized lease agreement with the designee of the Secretary of the Army to lease 4.73 acres of real property, including all buildings, improvements, and fixtures, comprising the Hotel and surrounding grounds (the "Lease Site").[5]  Lease at 1.

Hudson River also executed a Memorandum of Understanding ("MOU") with the USMA and the United States Army Community and Family Support Center to delineate certain specific responsibilities between the parties for the day-to-day oversight of operations of the Lease Site.  Fagan Decl. ¶ 6, Ex. E ("MOU"), at 1.  The Contract, Lease and MOU (collectively, the "Agreement") constitute the operative legal documents defining the relationship and respective

---

[4] The parties disagree as to whether Plaintiff exhausted her administrative remedies prior to filing this action.  *See* Def.'s Mem. Law Supp. Mot. Dismiss Compl. & Cross-Claim as to U.S. ("Def.'s Mem.") 8-10, 22-25, Doc. 12; Def.'s Reply Mem. Law Supp. Mot. Dismiss Compl. & Cross-Claim ("Def.'s Reply Mem.") 10, Doc. 25; Pl.'s Mem. Law Opp. Mot. Dismiss ("Pl.'s Mem.") 15-19, Doc. 19.  Resolution of this dispute is not necessary to the disposition of the instant motion, because the Court concludes that the independent contractor exception to the FTCA deprives the Court of subject matter jurisdiction over Plaintiff's Complaint and Brickman's cross-claim against the United States.  *See infra* Section III.

[5] The term "Hotel" is used in the Contract to reference not only the Hotel building itself, but also the surrounding land, buildings, improvements and fixtures encompassed by the Lease Site, as defined in the Lease.  Contract at 11, §§ 1.7(ap), 1.7(aw); Fagan Decl. ¶ 4, Ex. C ("Lease Site").  Similarly, the terms of the Lease apply to both the 4.73 acres of real property and all buildings, improvements and fixtures within the Lease Site.  Lease at 1.  The Court has used the terms "Hotel" and "Lease Site" interchangeably to describe the areas covered by the terms of the Agreement.

duties of Hudson River and the United States concerning the renovation, operation and maintenance of the Hotel and Lease Site.[6] Fagan Decl. ¶ 8.

Pursuant to the terms of the Agreement, Hudson River assumed full possession and responsibility for the day-to-day operation and maintenance of the Hotel and Lease Site. Contract at 27, § 3.1; *id.* at 18, § 1.11; *id.* at 4, § 1.2(a). In particular, Hudson River expressly agreed to: (1) "repair and maintain all buildings, improvements and fixtures within the Lease Site in good order, condition and repair," *id.* at 30, § 3.6(a); (2) "keep the [Hotel and Lease Site] in good order and in a clean, sanitary and safe condition," Lease at 9, § 12(a); (3) "keep the surface of the roads, the grounds, any associated lighting, and the subsurface of the roads, within the limits of the Lease Site in good order, condition and repair," Contract at 30, § 3.6(b)(1); and (4) repair as soon as practicable any damage to "existing curbing, roads, walks, trees, fencing, walls, landscaping and other Government property resulting from [Hudson River's] activity." *Id.* at 95, § 5.24(a). Hudson River is further required to "take all necessary steps and precautions to prevent accidents." *Id.* at 131, § 5.59; *see also id.* at 71, § 5.1(a), (b); Lease at 6-7, § 8.

In addition to the broad delegation of responsibility for the operation and maintenance of the Lease Site, the Agreement also expressly delegates detailed supervision and control of the work under the Agreement to Hudson River. *E.g.*, Contract at 138-39, § 5.65. Hudson River is solely responsible for the selection, supervision and assignment of duties for all Hotel employees. *Id.* at 33, § 3.12(a); *id.* at 99-100, § 5.35. The Government does not "exercise any supervision or control over [Hudson River] personnel performing services under the Contract." *Id.* at 99, § 5.35(c); *see also id.* at 99-100, § 5.35(b), (d-h). Hudson River also agrees to indemnify the United States for all liability resulting from the actions of its employees,

---

[6] For clarity, the Court has referred to the various government entities and instrumentalities that are parties to the Agreement collectively as the "United States" or the "Government."

subcontractors or the employees of subcontractors performing services under the Agreement. *Id.* at 86-87, § 5.15; Lease at 14, § 19.

Under the clear and unambiguous terms of the Agreement, the Government retains only a broad supervisory authority to ensure Hudson River's compliance with its contractual obligations, Contract at 18, § 1.10(b); *id.* at 32, § 3.9; *id.* at 117, § 5.45; Lease at 9, § 11; *id.* at 18, § 30, and certain specifically enumerated responsibilities as set forth in the Agreement. Contract at 17-18, § 1.10; *id.* at 29, § 3.5; *id.* at 30, § 3.6(b)(2); MOU at 3-6.  Significantly, with respect to the "roads and grounds" within the Lease Site, the Government is responsible "only for the restoration of surface area disruption caused by its subsurface repairs or maintenance of its existing utility lines."  Contract at 30, § 3.6(b)(2).

The Government has not performed any grounds maintenance or repairs within the Lease Site since Hudson River assumed possession and responsibility for the day-to-day operation and maintenance of the Hotel, and the Government "does not routinely direct, control, or supervise grounds maintenance or landscaping on the grounds of the Thayer Hotel, because contractors are responsible for those duties."  Lewis Decl. ¶¶ 3, 6.[7]

**II. Rule 12(b)(1) Motion to Dismiss**

The Government has moved to dismiss Plaintiff's FTCA Claim and Brickman's cross-claim for contribution for lack of subject matter jurisdiction pursuant to Rule 12(b)(1). "'Determining the existence of subject matter jurisdiction is a threshold inquiry and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it.'"  *Morrison v. Nat'l Austl. Bank*

---

[7] "Lewis Decl." refers to the Declaration of Mark J. Lewis that was filed in support of Defendant's Motion to Dismiss.  Doc. 16.  Lewis is Branch Chief for Land Maintenance, Roads and Grounds, Directorate of Public Works, USMA, Department of the Army, and has worked in various positions within the Land Maintenance Branch for approximately forty years.  Lewis Decl. ¶¶ 1, 3.

*Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citation omitted). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova v. United States,* 201 F.3d 110, 113 (2d Cir. 2000) (citation omitted). While the Court must accept as true all factual allegations in the complaint, *Morrison*, 547 F.3d at 170 (citation omitted)*,* the court may not draw any jurisdictional inferences in favor of the plaintiff. *Fraser v. United States*, 490 F. Supp. 2d 302, 307 (E.D.N.Y. 2007) (citing *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998)). "Jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *APWU v. Potter,* 343 F.3d 619, 623 (2d Cir. 2003) (internal quotation marks and citation omitted). Thus, in resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court may consider evidence outside the pleadings. *Morrison*, 547 F.3d at 170.

### III. The Federal Tort Claims Act

#### A. Legal Standard

"'[T]he United States, as sovereign, is immune from suit save as it consents to be sued . . . , and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.'" *Makarova*, 201 F.3d at 113 (quoting *United States v. Mitchell,* 445 U.S. 535, 538 (1980)). "The doctrine of sovereign immunity is jurisdictional in nature, and therefore to prevail, the plaintiff bears the burden of establishing that her claims fall within an applicable waiver." *Id.* (citations omitted). The FTCA waives the government's sovereign immunity only for suits arising from injuries "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment . . . ." 28 U.S.C. § 1346(b)(1). The definition of "employee of the Government" specifically excludes "any

contractor with the United States." 28 U.S.C. § 2671. "Thus, as a general rule, sovereign immunity precludes suits against the United States for injuries caused by its independent contractors." *Roditis v. United States*, 122 F.3d 108, 111 (2d Cir. 1997) (per curiam). Such claims are subject to dismissal for lack of subject matter jurisdiction. *Fisko,* 395 F. Supp. 2d at 62 (citing *United States v. Orleans*, 425 U.S. 807, 814 (1976)).

## B. Plaintiff's FTCA Claim

The Government argues that this Court lacks subject matter jurisdiction over Plaintiff's claim against the United States because this case falls within the independent contractor exception to the limited waiver of sovereign immunity provided for by the FTCA.[8] Def.'s Mem. 11, 13-21. Plaintiff concedes that Hudson River was acting as an independent contractor for the operation and maintenance of the Hotel, Pl.'s Mem. 3, 8, and she does not dispute that her injury occurred within the Lease Site. Pl.'s Mem. 1-2; *see also* Compl. ¶¶ 37-38. Plaintiff further concedes that the Court would not have subject matter jurisdiction over her claim if the fall was caused by the negligence of Hudson River. Pl.'s Mem. 8. Plaintiff argues, however, that if the United States did not "completely delegate every aspect of the operations and maintenance responsibility to [Hudson River], and if this accident occurred because of a defective condition existing because of the failure of the United States to fulfill maintenance responsibilities which were retained and not delegated," the Government can be held liable for her injuries arising from

---

[8] The Government also argues that this Court lacks subject matter jurisdiction over Plaintiff's claim because the discretionary function exception precludes any claim based on the allegation that the United States was negligent in hiring or supervising Hudson River. Def.'s Mem. 18-19; *see* Compl. ¶ 40. In opposing the instant motion, Plaintiff did not respond to the Government's argument regarding the applicability of the discretionary function exception to her claim. *See* Def.'s Reply Mem. 7 n.3. Thus, to the extent the Complaint alleges a claim against the United States for negligent hiring or supervision, the Court deems it abandoned. *See, e.g.*, *Adams v. N.Y. State Educ. Dep't*, 752 F. Supp. 2d 420, 452 n.32 (S.D.N.Y. 2010) (citations omitted), *aff'd sub nom. Ebewo v. Fairman*, 460 F. App'x 67 (2d Cir.), *cert denied*, 133 S. Ct. 434 (2012).

8

"the alleged negligence and carelessness of the employees of the federal government." Pl.'s Mem. 8.

### 1. Responsibility for Grounds Maintenance within the Lease Site

Plaintiff asserts that the terms of the Agreement "do not definitively demonstrate that the United States relinquished the entirety of its duties and responsibilities for maintaining the [Lease Site]," Pl.'s Mem. 3, and therefore the Government cannot "conclusively prove[] . . . that all pertinent maintenance duties over the area of the accident were delegated exclusively and in their entirety to the independent contractor and that no part whatsoever was retained by the United States itself." Pl.'s Mem. 11.

As an initial matter, Plaintiff's argument is premised on a misstatement of the burden for establishing subject matter jurisdiction. On a motion to dismiss pursuant to Rule 12(b)(1), the plaintiff bears the burden of establishing by a preponderance of the evidence that subject matter jurisdiction exists over her complaint.[9] *Makarova*, 201 F.3d at 113. Plaintiff's assertion that the terms of the Agreement are too "vague and indefinite" to determine which entity was responsible for maintaining the sidewalk where she fell is also unpersuasive.[10] Pl.'s Mem. 11. As discussed above, the Agreement explicitly delegates to Hudson River all responsibility within the Lease Site for repairing any damage to existing curbing, roads, trees and other landscaping, and taking

---

[9] Plaintiff's assertion that "[t]he burden on a motion to dismiss pursuant to Rule 12(b)(1) to show that the maintenance responsibilities in question had been delegated exclusively to the independent contractor is imposed upon the United States, as movant for such relief," Pl.'s Mem. 11, is not supported by her citation to *Pelchy v. United States*, 549 F. Supp. 2d 198 (N.D.N.Y. 2008). *See* Def.'s Reply Mem. 2 n.1.

[10] Plaintiff's reliance on *Pelchy v. United States* for this point is also unavailing. Pl.'s Mem. 11. In *Pelchy*, the court held that the plaintiff's FTCA claim could not be resolved on a motion to dismiss, because the limited portions of the contract submitted by the government did not clearly establish that the independent contractor was responsible for repairing the alleged dangerous condition. *Pelchy*, 549 F. Supp. 2d at 202-04. Here, in obvious contrast, the Government has submitted all relevant portions of the Agreement between Hudson River and the United States, *see* Fagan Decl. ¶¶ 8, 11, as well as a declaration from the Branch Chief for Land Maintenance, Roads and Grounds, Directorate of Public Works, USMA, which together clearly establish that the dangerous condition complained of was within the purview of Hudson River. Lewis Decl. ¶¶ 3, 5-6.

all necessary steps and precautions to prevent accidents. The Agreement further provides that Hudson River assumes full responsibility and liability for any injuries resulting from the acts of its employees, subcontractors, or the employees of its subcontractors. Other district courts in this Circuit have dismissed FTCA claims for lack of subject matter jurisdiction where, pursuant to identical or substantially similar contractual provisions, the government had delegated to the contractor all responsibility for maintenance and safety of the premises where an accident occurred. *See, e.g.*, *Moschetto v. United States*, 961 F. Supp. 92, 95-96 (S.D.N.Y. 1997); *see also Kapnisakis v. United States*, No. 94 Civ. 8619 (JSM), 1995 WL 510018, at *2-3 (S.D.N.Y. Aug, 28, 1995).

The Agreement unambiguously provides a broad delegation of responsibility for the day-to-day operations and maintenance within the Lease Site to Hudson River. Contract at 4, § 1.2(a); *id.* at 18, § 1.11; *id.* at 27, § 3.1. Plaintiff's assertion that the Agreement does not "allocate the type of street and parking lot cleaning involved in this litigation to either party," Pl.'s Mem. 6, is therefore unpersuasive. *See Brown v. United States*, No. 92 Civ. 0082 (WMS), 1994 WL 319015, at *12-13 (W.D.N.Y. June 8, 1994) (rejecting plaintiff's argument that contract did not delegate responsibility for inspecting specific aspect of roofing project to contractor where the contract provided a broad delegation of responsibility for inspection of the work performed during the roofing project to the contractor). The clear and unambiguous terms of the Agreement, together with the declaration of Mark J. Lewis, establish that all responsibility for the maintenance and safety of the sidewalk where Plaintiff fell was delegated to Hudson River.[11] Therefore, the Government cannot be held liable for injuries resulting from the alleged

---

[11] The various Agreement provisions highlighted by Plaintiff in an effort to demonstrate that the Government retained some responsibility for maintaining the sidewalk where she fell do not alter the Court's conclusion that Hudson River was responsible for any necessary acorn removal within the Lease Site. *See* Pl.'s Mem. 3-6, 11. The provisions cited by Plaintiff describe limited responsibilities retained by the Government for snow removal and

10

dangerous accumulation of acorns on the sidewalk where Plaintiff fell. *See, e.g.*, *Fisko*, 395 F. Supp. 2d at 63-64 (dismissing FTCA claim because pursuant to the terms of the government's contract with the contractor, the United States was not responsible for maintenance and repair of the sidewalk where the plaintiff fell); *see also Diaz v. U.S. Postal Serv.*, No. 02 Civ. 8892 (NRB), 2003 WL 21767530, at *3 (S.D.N.Y. July 31, 2003) (same); *Carter v. United States*, No. 96 Civ. 9139 (MBM), 1998 WL 744009, at *2-3 (S.D.N.Y. Oct. 26, 1998) (same).

### 2. Direct Negligence Claim against the United States

Plaintiff also argues that this Court has jurisdiction to adjudicate this matter because her FTCA Claim is based on the Government's "own acts of negligence separate and apart from those of the independent contractor," namely: (1) the Government's duty as a landowner to maintain the premises in a reasonably safe condition, and (2) the Government's failure to notify Hudson River about the dangerous condition created by the accumulation of acorns. Pl.'s Mem. 9-13.

As an initial matter, Plaintiff's assertion that this Court must accept as true the allegations in the Complaint that "the accident occurred, at least in part, by reason of the breach of duty by the United States itself," Pl.'s Mem. 8-9, is once again premised on a misstatement of the legal

---

street cleaning *outside* the Lease Site, Contract at 29, § 3.5; MOU at 4, § 5(b)(5), "the restoration of surface area disruption [to roads and grounds within the Lease Site] caused by [the Government's] subsurface repairs or maintenance of its existing utility lines," Contract at 30, § 3.6(b)(2), and the Government's right to generally oversee and inspect Hudson River's work to ensure its compliance with the terms of the Agreement. *Id.* at 95, § 5.24(a); *id.* at 117-18, § 5.45; *id.* at 131, § 5.59; Lease at 6, § 8(a), *id.* at 18, § 30; MOU at 2, § 5(a)(3)(a). *See, e.g.*, *Moreno v. United States*, 965 F. Supp. 521, 525-27 (S.D.N.Y. 1997) (noting that the government's power to inspect a contractor's work does not support jurisdiction (citations omitted)); *see also Roditis*, 122 F.3d at 111 (citing *Leone v. United States*, 910 F.2d 46, 50 (2d Cir. 1990)) (same).

Plaintiff's reliance on these provisions to assert that further discovery is necessary is also unpersuasive. Pl.'s Mem. 3, 10, 13; *see also* Brickman Mem. Law. Opp. Mot. Dismiss Compl. & Cross-Claims 3, Doc. 22. In the face of the unambiguous contractual language delegating responsibility for maintaining the Lease Site in a safe condition to Hudson River, and the Government's unrebutted evidence that it does not directly perform any grounds maintenance work within the Lease Site, or routinely supervise Hudson River's grounds maintenance work within the Lease Site, Lewis Decl. ¶¶ 3, 5-6, there is no basis for any additional discovery in this case. *Moreno*, 965 F. Supp. at 527.

standard for a Rule 12(b)(1) motion to dismiss. *Makarova*, 201 F.3d at 113. Indeed, even on a Rule 12(b)(6) motion, such a conclusory assertion would not be entitled to a presumption of truth. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

The FTCA precludes government liability absent a negligent act, and thus the Government cannot be held liable for injuries caused by an independent contractor on the basis of a state law duty as a landowner to maintain its property in a reasonably safe condition. *Roditis*, 122 F.3d at 111-12 (citing *Logue v. United States*, 412 U.S. 521, 528 (1973)); *see also Fraser*, 490 F. Supp. 2d at 312 ("[C]ourts are legion in holding that the FTCA does not waive sovereign immunity for the non-delegable duties of landowners under state law." (citations omitted)). Contrary to Plaintiff's assertion, where the Government delegates all responsibility for maintaining the safety of the premises to an independent contractor, it cannot be held liable under the FTCA for injuries that occur on the premises solely because it is the landowner.[12] *See Roditis*, 122 F.3d at 111-12 (rejecting plaintiff's assertion that the United States has a duty to ensure the safety of government-owned property that survives the delegation of responsibility for maintaining the property to a contractor); *see also Diaz*, 2003 WL 21767530, at *2 (same); *Burke v. United States*, No. 96 Civ. 2470 (LBS), 1996 WL 671151, at *2 (S.D.N.Y. Nov. 19, 1996) (same).

---

[12] Plaintiff's argument to the contrary is not supported by the case to which she cites. Pl.'s Mem. 10. In *Brown v. United States*, the court noted that the government could potentially be liable for failing to remedy a dangerous condition on its property that existed *after the effective period of its agreement with the independent contractor*, if the plaintiff showed that the government either created or had notice of the condition, that it failed to correct the condition within a reasonable period of time after acquiring such knowledge, and that plaintiff's accident and resulting injury were proximately caused by the dangerous condition. 1994 WL 319015, at *17-20. Here, Plaintiff has not alleged, nor could she allege, that the Government was negligent in failing to correct a defective condition that existed after the expiration of the Agreement with Hudson River; therefore, the reasoning in *Brown* is inapplicable to this case.

The sole case cited by Brickman, which does not have precedential effect in this Court, is also inapposite. *See Miller v. George Arpin & Sons, Inc.*, 949 F. Supp. 961, 966 (D.R.I. 1997) (holding that court could exercise jurisdiction over FTCA claim where plaintiff alleged that insufficient lighting was a contributing cause of her accident, because, under the terms of the contract between the government and the contractor, the government retained responsibility for general safety of the premises).

Similarly, the Government cannot be held liable under the FTCA for failing to notify Hudson River of a dangerous condition within the Lease Site, because the United States delegated all responsibility for grounds maintenance and the prevention of accidents within the Lease Site to the contractor.[13]  *See, e.g.*, *Hentnik v. United States*, No. 02 Civ. 9498 (DC), 2003 WL 22928648, at *7 (S.D.N.Y. Dec. 10, 2003) (explaining that government's notice of unsafe condition is irrelevant, because any failure to take corrective action does not create liability where the government has delegated matters of safety and repair to an independent contractor (citing *Moreno*, 965 F. Supp. at 527)); *see also Fraser* 490 F. Supp. 2d at 312-13 (explaining that where the government has delegated to an independent contractor the responsibility for maintaining its property, it is the contractor's responsibility to repair any alleged defects on the property, and the government cannot be held liable as a landowner under the FTCA).  Under the clear and unambiguous terms of the Agreement, the Government was not responsible for the maintenance of the sidewalk where Plaintiff fell, and therefore it cannot be held liable for any "direct acts of negligence" in the manner Plaintiff suggests.

Finally, Plaintiff's conclusory assertion that "the United States should be deemed to have at least some responsibility to monitor and control maintenance" within the Lease Site, because the Hotel is "physically integrated" within the USMA campus and there are no physical or visual demarcations separating the Hotel grounds from the surrounding USMA property is not supported by any legal authority.  Pl.'s Mem. 11-12; s*ee also Roditis*, 122 F.3d at 110 ("The span

---

[13] Plaintiff's reliance on *Suro v. United States,* 107 F. Supp. 2d 206 (E.D.N.Y. 2006), to argue otherwise is unavailing.  In *Suro*, the plaintiff alleged that a government employee who had unique knowledge of the dangerous condition that caused her injury was negligent in failing to inform an independent contractor about the condition. 107 F. Supp. 2d at 209 (citations omitted).  Here, in obvious contrast, the Complaint alleges that Defendants collectively had actual and/or constructive notice of the regularly recurring, dangerous conditions created by the acorns.  Compl. ¶¶ 40, 42; *see Diaz*, 2003 WL 21767530, at *3 (rejecting plaintiff's reliance on *Suro* to support her claim of direct negligence against the United States because complaint alleged that the contractor should have been aware of the dangerous condition and that contractor was responsible for the condition).

of a construction site is not limited to the precise area where the construction is taking place; it includes adjacent areas as well," and "the absence of barricades or warning signs does not establish that the area was outside the control of the independent contractor."); *see also Moschetto*, 961 F. Supp. at 96 (S.D.N.Y. 1997) ("[C]onclusory allegations of governmental direction and supervision of [contractor's] work . . . are insufficient to defeat the Government's jurisdictional motion." (citations omitted)).

Therefore, the Government's Motion to Dismiss Plaintiff's FTCA claim for lack of subject matter jurisdiction is GRANTED.

### C. Brickman's Cross-Claim

Since the independent contractor exception applies to and deprives this Court of subject matter jurisdiction over Plaintiff's FTCA claim, the Court also lacks jurisdiction over Brickman's cross-claim. *Hsieh v. Consol. Eng'g Servs., Inc.*, 569 F. Supp. 2d 159, 177 (D.D.C. 2008); *see also Cabalce v. VSE Corp.*, Nos. 12 Civ. 0373 (JMS) (RLP), 12 Civ. 0376 (JMS) (RLP), 12 Civ. 0377 (JMS) (RLP), 12 Civ. 0391 (JMS) (RLP), --- F. Supp. 2d ----, 2012 WL 5996548, at *9-10, *20 (D. Haw. Nov. 29, 2012).

Therefore, the Government's Motion to Dismiss Brickman's cross-claim for lack of subject matter jurisdiction is also GRANTED.

## IV. Plaintiff's Claims against Brickman and Hudson River

Federal jurisdiction in this case is based entirely on the FTCA claim against the United States. Compl. ¶¶ 2, 3. There are no other causes of action asserted in the Complaint, and there are no allegations to support diversity jurisdiction as between Plaintiff and the other two defendants. Fed. R. Civ. P. 8(a)(1). Therefore, having dismissed Plaintiff's FTCA claim against

the United States, the Court lacks jurisdiction to adjudicate this matter.[14] Accordingly, Plaintiff's Complaint must be dismissed in its entirety for lack of federal jurisdiction. *Diaz*, 2003 WL 21767530, at *3.

## V. Conclusion

For the reasons set forth above, Defendant's Motion to Dismiss is GRANTED, and Plaintiff's Complaint is dismissed in its entirety for lack of subject matter jurisdiction. The Clerk of the Court is respectfully directed to terminate this motion, Doc. 11, and to close this case.

It is SO ORDERED.

Dated:   February 15, 2013
         White Plains, New York

_____
Edgardo Ramos, U.S.D.J.

---

[14] While none of the parties have raised this jurisdictional issue, the Court undoubtedly can raise it *sua sponte*. See *Durant, Nichols, Houston, Hodgson & Cortese-Costa, P.C. v. DuPont*, 565 F.3d 56, 62-64 (2d Cir. 2009).